**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| FEINGOLD MORGAN SANCHEZ LLC,<br>FEINGOLD LLC,<br>AND DAVID FEINGOLD,<br><br>Plaintiffs,<br>v.<br><br>INTERNAL REVENUE SERVICE,<br>DEPARTMENT OF TREASURY, AND<br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No.: 6:26-cv-00450-JDA |

**UNITED STATES' MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

**I. The Anti-Injunction Act and Declaratory Judgment Act bar Plaintiffs' First, Second, Third, Fourth, and Ninth Causes of Action.......... 3**

a. The First, Second, and Third Causes of Action are still barred by the Anti-Injunction Act and by the tax exception to the Declaratory Judgment Act. .......... 3

b. The Declaratory Judgment Act likewise bars Plaintiffs' newly added Fourth and Ninth Causes of Action. .......... 7

**II. The Administrative Procedure Act does not support Plaintiffs' first three causes of action. .......... 8**

**III. Plaintiffs' first four Causes of Action should be dismissed because they all rest on a misreading of the Supreme Court's decision in *Jarkesy* and because Plaintiffs chose a forum in which no jury trial was available.......... 9**

a. There is no Seventh Amendment right to a jury trial in Tax Court. .......... 10

i. The Seventh Amendment does not afford the right to a jury trial for tax penalties in Tax Court. .......... 10

ii. There is no constitutional right to a jury trial in suits against the sovereign. .......... 16

b. Plaintiffs chose to litigate their fraud penalties in a venue without jury trials. .......... 18

**IV. Plaintiffs' Fifth and Sixth Causes of Action under 26 U.S.C. § 6103 and the Privacy Act fail as they were not pleaded with specificity and are time-barred.......... 20**

a. Plaintiffs fail to specifically allege any unauthorized disclosures under 26 U.S.C. § 6103 or harm that would support actual damages. .......... 21

b. Plaintiffs fail to specify a disclosure in violation of the Privacy Act, so the Court should dismiss the Sixth Cause of Action. .......... 23

c. Plaintiffs fail to allege facts showing that their causes of action under § 6103 and the Privacy Act are not time-barred. .......... 25

**V. Plaintiffs' Seventh Cause of Action for purported First Amendment violations still fails as they cannot show retaliation. .......... 26**

a. Plaintiffs' requested declaratory relief is barred by the DJA. .......... 27

b. Plaintiffs again fail to show causation between the First Amendment activity and the purported retaliation. .......... 28

**VI. The Eighth Cause of Action for a purported Fifth Amendment violation still fails because Plaintiffs have not alleged facts sufficient to show an equal protection violation. .......... 30**

**VII. Plaintiffs' Ninth Cause of Action fails to state a claim for relief. .......... 32**

**VIII. Venue is still not proper in South Carolina. .......... 33**

In their first complaint, Plaintiffs alleged a litany of issues with the IRS—none of which amounted to cognizable claims for which relief can be granted. When the United States moved to dismiss, Plaintiffs filed an amended complaint that fails to cure the deficiencies in their original complaint. Just like their initial complaint, their Amended Complaint should be dismissed because the Court lacks jurisdiction to grant the equitable relief Plaintiffs seek, FRCP 12(b)(1), and because it fails to state a claim upon which relief can be granted, FRCP 12(b)(6).[1]

As this Court has already held, the Anti-Injunction Act bars the relief that Plaintiffs seek in their First, Second, and Third Causes of Action. And because the Fourth Circuit treats the Anti-Injunction Act and the federal tax exception to the Declaratory Judgment Act as coextensive, the Declaratory Judgment Act also bars these causes of action. For similar reasons, the Fourth, Seventh, Eighth, and Ninth Causes of Action cannot proceed. Plaintiffs make no attempt to differentiate these causes, nor show how they evade the plain bars of the Anti-Injunction Act and Declaratory Judgment Act. The Court can and should dismiss all these counts due to a lack of subject-matter jurisdiction.

The first three causes of action also fail because Plaintiffs have adequate remedies beyond this suit, so those arguments cannot fit within the waiver of sovereign immunity in the Administrative Procedure Act.

In the Fifth and Sixth Causes of Action, Plaintiffs allege that the IRS made an unauthorized disclosure in violation of 26 U.S.C. § 6103 and the Privacy Act. These claims fail

[1] Plaintiffs have appealed the Court's denial of their motion for preliminary injunction. (ECF No. 22.) "As a general proposition, the timely filing of a notice of appeal confers jurisdiction in the court of appeals 'and divests the district court of its control over those aspects of the case involved in the appeal.'" *Dixon v. Edwards*, 290 F.3d 699, 709 n.14 (4th Cir. 2002) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). But for an interlocutory appeal, the district court retains authority to consider the rest of the case, including the merits. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 301 (4th Cir. 2000).

because Plaintiffs did not plead a disclosure with sufficient specificity. To state a claim, Plaintiffs must allege with specificity the actual disclosure, the number of disclosures, that the disclosure violates § 6103, and the harm incurred. Here, Plaintiffs merely recited the legal elements of an unauthorized disclosure claim, without identifying any facts supporting entitlement to relief under either 26 U.S.C. § 7431 or the Privacy Act. Although the United States pointed out these deficiencies in its original motion to dismiss, Plaintiffs did not attempt to clarify their claims, nor plead the purported unlawful disclosure with specificity. The Court should dismiss the Fifth and Sixth Causes of Action.

The Seventh Cause of Action is for a purported First Amendment violation. Granting relief would require the Court to find aspects of the IRS's assessment process are unlawful, in violation of the Declaratory Judgment Act. Additionally, the claim does not sufficiently allege causation: they clearly state that the IRS's actions were the same before and after the "protected activity" occurred. That is not retaliation. Plaintiffs still do not allege any additional facts showing retaliation. As such, Plaintiffs fail to state a claim for which relief can be granted under the First Amendment, and the Court should dismiss the Seventh Cause of Action.

Plaintiffs' Eighth Cause of Action, an equal protection claim, fares no better. In addition to being barred by the Declaratory Judgment Act, there is no relief under the Fifth Amendment for retaliation claims (assuming *arguendo* that Plaintiffs had a valid retaliation claim). Nor have they adequately alleged a "class of one" claim. And as with the other causes, Plaintiffs do not allege any new facts to support their case. The Court should dismiss the Eighth Cause of Action.

In sum, for each cause of action, Plaintiffs fail to state a claim for which relief can be granted. The Court should dismiss this case.

## ARGUMENT

**I. The Anti-Injunction Act and Declaratory Judgment Act bar Plaintiffs' First, Second, Third, Fourth, and Ninth Causes of Action.**

***a. The First, Second, and Third Causes of Action are still barred by the Anti-Injunction Act and by the tax exception to the Declaratory Judgment Act.***

When Plaintiffs sought preliminary relief specifically asking for an injunction, this Court correctly "conclude[d] that granting the requested relief would violate the Anti-Injunction Act." ECF 13. The same reasoning compels the conclusion that the AIA also bars the First, Second, and Third Causes of Action. The Court should dismiss them for lack of jurisdiction.

Plaintiffs' first two causes of action ask this Court to find unlawful the statutory notices of deficiencies sent to them by the IRS and to "set [them] aside." ECF 20 at ¶¶ 100, 111 ("Am. Compl."). Their third cause of action asks the Court to declare the notices "unconstitutional and invalid." *Id.* ¶ 112. Their prayer for relief asks the Court to "[p]ermanently enjoin the enforcement of" the statutory notices of deficiency.[2] These requests seek to restrain the assessment and collection of taxes because invalidating the statutory notices of deficiency would prevent the assessment of the proposed tax deficiency, including the fraud penalties. As such, the Anti-Injunction Act (AIA) and the Declaratory Judgment Act (DJA) bar these causes of action.

The Anti-Injunction Act, 26 U.S.C. § 7421(a), specifically bars any "suit for the purpose of restraining the assessment or collection of any tax."[3] The AIA is strictly enforced. *See Bob*

---

[2] This is also the underpinning of the Fourth Cause of Action which asks the Court to declare the statute for Notices of Deficiency, 26 U.S.C. § 6212, unconstitutional.

[3] The statute enumerates certain exceptions, none of which apply here. However, one exception to the AIA is worth noting: section 6213(a). Section 6213(a) prevents the IRS from making an assessment or collecting a tax until the expiration of the period the taxpayer can petition the Tax Court, and if such petition is filed, until the decision becomes final. It also allows courts to enjoin "the making of such assessment or the beginning of such proceeding or levy during the time [when] such prohibition is in force" without running afoul of 26 U.S.C. § 7421(a). Plaintiffs do not allege that the IRS has made an assessment or levied or attempted to collect by suit the tax at issue in the notice of deficiency, and as such, this exception does not apply.

*Jones University v. Simon*, 416 U.S. 725 (1974). And "[w]here it applies, the AIA deprives courts of jurisdiction to entertain pre-enforcement suits seeking to enjoin the collection of federal taxes." *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 (4th Cir. 2013). The purpose of the AIA is to protect the Government's "need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference and 'to require that the legal right to the disputed sums be determined in a suit for a refund.'" *Bob Jones,* 416 U.S. at 736 (quoting *Enochs v. Williams Packing & Navigation Co*., 370 U.S. 1, 7 (1962)). The AIA "applies broadly to include activities that…may culminate in the assessment or collection of taxes," including steps required to "determine tax liability." *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003).

Plaintiffs claim that they are not seeking to restrain the IRS from assessing tax. Am. Compl. at ¶¶ 22, 97. But they are. Although Plaintiffs allege the notices of deficiency are unconstitutional because of the fraud penalties determined in them, the relief they seek is not aimed solely at the fraud penalties. Instead, Plaintiffs seek to set aside or invalidate the notices of deficiency in their entirety. *See Standard Ins. v. IRS*, 162 F.4th 1035, 1042-43 (10th Cir. 2025) (suit seeking a declaration that plaintiff was a legitimate micro-captive insurance company and the notice of deficiency is void runs afoul of the AIA because such relief would "restrain the tax court from upholding the basis of the IRS's Deficiency Notices, relief that would inexorably restrain tax assessment."); *see Hancock County Land Acquisitions LLC v. United States*, 2022 WL 3449525 (11th Cir. 2022) (determining that suit to prevent issuance of a Final Partnership Administrative Adjustment, a statutory prerequisite to assessment, was barred by the AIA). Granting that relief would neceessarily bar the assessment of the underlying deficiencies. *See* 26 U.S.C. §§ 6212 & 6213.

The AIA and DJA do not allow such relief. Even if Plaintiffs' request for relief was limited to enjoining the fraud penalties, it would still clearly fall within the scope of the AIA pursuant to 26 U.S.C. § 7421(a). The Supreme Court has explained that the AIA is a "creatur[e] of Congress's own creation," and Congress can "describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the Anti–Injunction Act." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012). The fraud penalty, created by 26 U.S.C. § 6663, is in Chapter 68, subchapter A of the Internal Revenue Code. Section 6665(a)(2) of the code says that "any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter." 26 U.S.C. § 6665(a)(2). Therefore, the fraud penalty is treated as a tax for purposes of the AIA.

Further, to determine whether a suit is barred by the AIA, the Supreme Court inquires *not* into the taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests. *CIC Services, LLC v. IRS*, 593 U.S. 209, 217 (2021). But that rule does not help the Plaintiffs. In *CIC Services*, the Supreme Court determined that the AIA did not bar a suit challenging Notice 2016-66, which contained a reporting requirement backed by a tax penalty for failure to do so. *See id.* at 216. At issue here is the notice of deficiency, which is required by before certain taxes are assessed against a specific taxpayer. 26 U.S.C. § 6212. To be valid, a notice of deficiency must show that, prior to its issuance, the Commissioner determined a deficiency in tax due from the specific taxpayer named in the notice. *See Scar v. Comm'r*, 814 F.2d 1363, 1370 (9th Cir. 1987). Although both are called "notices," Notice 2016-66 is vastly different from the statutory notices of deficiency issued to Plaintiffs.

The issue before the Supreme Court in *CIC Services* was very different from the one presented here. The *CIC Services* petitioners contested the legality of the notice, but not the tax

obligation that would result from noncompliance with the notice. Here, Plaintiffs *are* contesting the tax obligation. As the Supreme Court observed, if "an injunction against the Notice is the same as one against the tax penalty," then "no amount of artful pleading would avail" and "the Anti-Injunction Act would apply." *CIC Servs.*, 593 U.S. at 219. In *CIC Services*, an injunction against the notice was not the same as one against the penalty. *See id.* at 219-23. But it is here. Whereas Notice 2016-66 and a potential tax penalty were "several steps removed from each other," *id.*, that is not the case here. The statutory notice of deficiency is a determination of Plaintiffs' tax deficiencies; it is a necessary step in assessing the taxes and penalties determined in it; and it is the last step (but for Tax Court proceedings) before assessment. In other words, whereas Notice 2016-66 in *CIC Services* "levies no tax," *id.* at 220, the notices of deficiency here do. In short, *CIC Services* demonstrates that Plaintiffs' claims *are* barred by the AIA.

It does not help Plaintiffs that their causes of action are phrased more in terms of a declaratory judgment than an injunction. *See* Am. Compl. ¶¶ 100, 111, 121; *see also id.* at ¶ 127. Under the express language of the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201(a), a federal district court cannot entertain a declaratory judgment action involving taxpayers' federal tax assessments. Section 2201(a) provides:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986 … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

§ 2201(a) (emphasis added). The Supreme Court noted that "[t]here is no dispute . . . that the federal tax exception to the [DJA] is at least as broad as the [AIA]." *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976) (quoting *Bob Jones Univ.*, 416 U.S. at 732 n.7 (internal quotation marks omitted)). Further, the Fourth Circuit treats the DJA exception as coextensive with the

AIA. *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 299 (4th Cir. 2000). *See also Rueda v. Yellen*, No. 22-1584, 2023 WL 8271939, at *2 (4th Cir. Nov. 30, 2023) (per curiam) (finding that the Declaratory Judgment Act still barred plaintiff's Due Process claim as it aimed to restrain the assessment of tax). The purpose of the AIA and the DJA exception is "to allow the Federal Government to assess and collect allegedly due taxes without judicial interference and to compel taxpayers to raise their objections to collected taxes in suits for refunds." *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 584 (4th Cir. 1996) (citing *Enochs v. Williams Packaging Co.*, 370 U.S. 1, 7 (1962) (concerning the AIA); *Flora v. United States*, 362 U.S. 146, 164 & n. 29 (1960) (concerning the DJA). Because the AIA blocks the injunctive relief Plaintiffs seek, the DJA likewise blocks declaratory relief. *See McCabe*, 526 F.2d at 965 ("Having found the Anti-Injunction Act applicable, we necessarily conclude that no declaratory relief is available."). There is no relief in the instant case for first three causes of action: as they seek to restrain the assessment and collection of tax, the court lacks jurisdiction over this suit.

***b. The Declaratory Judgment Act likewise bars Plaintiffs' newly added Fourth and Ninth Causes of Action.***

Plaintiffs' Amended Complaint adds two new causes of action, the Fourth and the Ninth. Both causes of action request relief that is barred by the DJA.

First, Plaintiffs' new Fourth Cause of Action seeks to have this Court declare that 26 U.S.C. § 6212 is unconstitutional because it purportedly "deprives Plaintiffs of their right to a jury trial under" *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024). Am. Compl. ¶ 125. This claim mirrors their Third Cause of Action except that it asserts a facial challenge to § 6212, not just an as-applied challenge. *Compare* Am. Compl. ¶¶ 115-21 *with id.* ¶¶ 123-127. But Plaintiffs' facial constitutional challenge still flunks the AIA and DJA. The Supreme Court has made it "unmistakably clear that the constitutional nature of a taxpayer's

claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." *Alexander v. Americans United Inc.*, 416 U.S. 752, 759 (1974). And including a facial challenge does not change "the action's objective aim—essentially, the relief the suit requests." *CIC Servs.*, 593 U.S. at 217. The objective aim of the suit is still to block the IRS from assessing specific tax liabilities against Plaintiffs.

Similarly, Plaintiffs' new Ninth Cause of Action asks this Court to "declare the Government is using the levers of its powers to target Plaintiffs for improper and unlawful personal and/or ideological reasons." Am. Compl. ¶ 173. Plaintiffs provide no detailed allegations in support, other than referring to "the reasons stated in this Amended Complaint." Am. Compl. ¶ 171. Given the gravamen of the Amended Complaint, the Ninth Cause of Action remains one "with respect to Federal taxes." *See* 28 U.S.C. § 2201(a). It should be dismissed.

## II. The Administrative Procedure Act does not support Plaintiffs' first three causes of action.

Plaintiffs' first three causes of action also fail for another reason. For the First and Second Causes of Action, Plaintiffs apparently rely on the Administrative Procedure Act (APA) for a waiver of sovereign immunity. *See* Am. Compl. ¶ 20 (citing 5 U.S.C. § 702); *see also id.* ¶¶ 100, 111. For the Third, Plaintiffs seem to rely on the DJA as a waiver. *See* Am. Compl. ¶ 23. Neither argument has merit.

The DJA does not "constitute a waiver of sovereign immunity or create a jurisdiction." *Circuit City Stores, Inc. v. EEOC*, 75 F. Supp. 2d 491 (E.D. Va. 1999), *aff'd*, 232 F.3d 887 (4th Cir. 2000). Instead, the waiver of sovereign immunity for declaratory relief against the United States typically falls under 5 U.S.C. § 702. *See id.* Section 702, though, does not waive sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." As explained above, the AIA and DJA forbid the relief Plaintiffs seek.

In addition, the APA only makes an agency action reviewable if "there is no other adequate remedy in a court." 5 U.S.C. § 704. But here, Plaintiffs have two other avenues. First, they can petition the Tax Court seeking redetermination of the proposed liabilities—which they have done. *David Feingold v. Comm'r*, Docket No. 19354-24 (filed Dec. 10, 2024); *Feingold, LLC v. Comm'r*, Docket No. 19358-24 (filed Dec. 10, 2024); *Feingold Morgan Sanchez, LLC v. Comm'r*, Docket No. 19356-24 (filed Dec. 10, 2024).[4] Second, Plaintiffs can first pay the taxes and penalties; submit a refund claim; and, if the Service denies the claim or six months elapse without a decision, file a refund suit in district court or the Court of Federal Claims. *See* 26 U.S.C.§§ 6532(a)(1), 7422(a); 28 U.S.C. § 1346(a)(1); *United States v. Janis*, 428 U.S. 433, 440 (1976). Plaintiffs have adequate remedies, one of which they are in fact taking advantage of. As such, the IRS's issuance of statutory notices of deficiency is not reviewable under the APA. *See also, e.g.*, *Starr Int'l Co. v. United State*s, 910 F.3d 527, 536 (D.C. Cir. 2018) (explaining that taxpayers could not bring suit under Administrative Procedure Act because refund suit was appropriate vehicle for raising claims).

### III. Plaintiffs' first four Causes of Action should be dismissed because they all rest on a misreading of the Supreme Court's decision in *Jarkesy* and because Plaintiffs chose a forum in which no jury trial was available.

The Court need not, and should not, reach the merits of Plaintiffs' first four Causes of Action: the Court lacks subject-matter jurisdiction over them, as explained above. But if the Court does consider those claims, it should reject them on the merits. Plaintiffs' first three causes of action contend that the IRS violated their Seventh Amendment right to a jury trial by asserting fraud penalties against them. The fourth cause of action claims that 26 U.S.C. § 6212 is unconstitutional, apparently because the IRS can use it to assert fraud penalties. Each of those

[4] The cases were consolidated under *Feingold v. Commissioner*. Order, *Feingold v. Comm'r* (T.C. entered Nov. 21, 2025).

causes of action rests on a misreading of the Supreme Court's decision in *Jarkesy*—and each ignores that Plaintiffs elected to litigate their fraud penalties in a forum without juries.

### *a. There is no Seventh Amendment right to a jury trial in Tax Court.*

Taxpayers are afforded a right to a jury against the government where the sovereign has consented. Plaintiffs fail to show that consent exists for Tax Court cases and instead erroneously rely on two cases: *Jarkesy* and *Sagoo*. Those cases are fundamentally distinct from this one. A case before the Tax Court does not afford the right to a jury trial, and *Jarkesy* and *Sagoo* do not support any assertion to the contrary.

#### *i. The Seventh Amendment does not afford the right to a jury trial for tax penalties in Tax Court.*

The Seventh Amendment "preserve[s]" the right to trial by jury, but only in "[s]uits at common law." U.S. Const. Amend. VII. To determine whether a case qualifies, the Supreme Court draws a distinction between cases involving private rights and those involving public rights (the "public rights doctrine"). *Jarkesy*, 603 U.S. at 127-28. Cases concerning private rights are those that a litigant has the right to have decided by an Article III court. *Id*. By contrast, cases concerning public rights are those that "'historically could have been determined exclusively by [the executive and legislative] branches'" and to which the Seventh Amendment rights do not attach. *Id*. at 128 (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)).

Matters encompassed within the public rights exception to the Seventh Amendment include, among other things, immigration law, administration of public lands, and granting of public benefits. *Jarkesy*, 603 U.S. at 129-30. The public rights exception also includes matters concerning the collection of revenue—the matter at issue here. *Id*. at 128-29. Indeed, such matters represent the core of the public rights exception, as they were the first category of public rights recognized by the Supreme Court and "flow[ ] from centuries-old rules concerning

revenue collection by the sovereign" via summary, non-judicial proceedings. *Id*. at 128-29, 131 (citing *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 272, 275-76, 278, 280-82, 285 (1855)).

These long-standing principles reflect the critical role that the collection of revenue plays in government and the attendant disruption that might follow if taxpayers were entitled, as a matter of right, to forestall payment pending judicial review. *Cheatham v. United States*, 92 U.S. (2 Otto) 85, 88-89 (1875); *see also Bull v. United States*, 295 U.S. 247, 259 (1935) ("taxes are the lifeblood of government, and their prompt and certain availability an imperious need"). Thus, "[i]t is within the undoubted power of Congress to provide any reasonable system for the collection of taxes and the recovery of them when illegal, without a jury trial," so long as due process is satisfied. *Wickwire v. Reinecke*, 275 U.S. 101, 105-06 (1927); *accord Jarkesy*, 603 U.S. at 128-29.

Further, for as long as Congress has exercised its authority to lay and collect taxes under Article I, Section 8, it has backed those taxes up with civil penalties for taxpayers who fail to accurately report and pay their liabilities. *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938) ("the payment of fixed or variable sums of money" as a sanction has been "recognized as enforceable by civil proceedings since the original revenue law of 1789"); *Murray's Lessee*, 59 U.S. at 282. Such penalties serve "as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id*. at 401.

Civil tax penalties, including the fraud penalties the IRS asserted against Plaintiffs, share many of the same characteristics as the underlying taxes to which they relate. They are generally "assessed, collected, and paid in the same manner as taxes." 26 U.S.C. § 6665(a)(1); *see also* 26

U.S.C. § 6671(a). They are typically dependent upon, and calculated as a percentage of, a taxpayer's underreporting or underpayment of tax. *E.g.*, 26 U.S.C. §§ 6651(a)(1), (f), 6663(a); *see also Mitchell*, 303 U.S. at 401-02 (addressing tax fraud penalty calculated as 50% of the deficiency in tax). And, like the taxes to which they relate, civil tax penalties ordinarily arise as a matter of law, separate from the need for any formal assessment. *Polselli v. IRS*, 598 U.S. 432, 442 (2023) (taxes). *See also Allen v. United States*, 51 F.3d 1012, 1015 (11th Cir. 1995) (citing *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1245-47 (5th Cir. 1978)) (penalties).

Given the close relationship between taxes and tax penalties, it is unremarkable that courts have treated them similarly with respect to taxpayers' entitlement to a jury trial. Over 100 years ago, the Supreme Court characterized as "settled" the proposition that Congress could impose taxes and "sanction their enforcement by reasonable money penalties … without the necessity of invoking the judicial power." *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 338-39 (1909). Thirty years after *Oceanic Steam*, in rejecting a taxpayer's claim that the IRS's assertion of a tax fraud penalty following his acquittal on related criminal charges violated the Fifth Amendment's prohibition against double jeopardy, the Supreme Court observed that "the determination of the facts upon which liability [for the penalty] is based may be made by an administrative agency instead of a jury." *Mitchell*, 303 U.S. at 402 & n.7. More recently, in discussing the public rights exception to the Seventh Amendment, the Supreme Court reiterated that "taxes may constitutionally be assessed and collected together with penalties, with the relevant facts in some instances being adjudicated only by an administrative agency." *Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 450 (1977) (citing *Phillips v. Comm'r*, 283 U.S. 589, 599-600 (1931), and *Murray's Lessee*, 59 U.S. at 284).

Courts of appeals have taken the Supreme Court at its word and held likewise. *E.g.*, *Walker v. United States*, 240 F.2d 601, 603-04 (5th Cir. 1957); *Olshausen v. Comm'r*, 273 F.2d 23, 27-28 (9th Cir. 1959); *see also Funk v. Comm'r*, 687 F.2d 264, 256-266 (8th Cir. 1982) (sustaining, over taxpayers' objection, tax penalty determination made following bench trial); *Blackburn v. Comm'r*, 681 F.2d 461, 461-462 (6th Cir. 1982) (same); *Dorl v. Comm'r*, 507 F.2d 406, 407 (2d Cir. 1974) (same). This Court should do the same and dismiss Plaintiffs' First through Fourth causes of action.

Relatedly, the Seventh Amendment does not guarantee jury trials in non-Article III tribunals such as the Tax Court. The Supreme Court's "precedents establish that, when Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 345 (2018) (citation omitted); *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989). Plaintiffs do not claim that Article III bars the Tax Court from redetermining their liability for taxes and penalties. *See generally* Am. Compl. It follows that the Seventh Amendment "poses no independent bar" to the Tax Court's resolving their cases without juries. *Oil States*, 584 U.S. at 345.

Plaintiffs' argument otherwise rests on a misreading of *Jarkesy*. The Supreme Court expressly "recognized a class of cases concerning what we have called 'public rights.'" 603 U.S. at 128. If the public rights exception applies, Congress can "enforce" its statutes "with administrative penalties assessed without a jury." *See id.* at 129 (discussing *Oceanic Steam*). And the *Jarkesy* Court *unanimously* agreed that the collection of revenue is a class of cases where the public rights exception applies. *See id.* at 128-29 (majority op.); *id.* at 152-53 (Gorsuch, J.,

concurring); *id.* at 175-76 (Sotomayor, J., dissenting). So *Jarkesy* is no bar to the IRS's assertion of penalties, even fraud penalties.

Ignoring the public rights exception discussion in *Jarkesy* entirely, Plaintiffs insist that they are entitled to a jury trial because both the penalty the IRS asserted against them and the penalty at issue in *Jarkesy* were called "fraud" penalties. *See* Am. Compl. ¶¶ 65-68. But the penalties simply are not comparable. To begin with, Plaintiffs could have obtained a jury by paying the asserted deficiencies and suing for a refund in federal district court, as explained above. The individuals charged with penalties by the Securities and Exchange Commission in *Jarkesy* had no such option. *See* 603 U.S. at 116-17.

The nature of the government's claim was different, too. The Supreme Court in *Jarkesy* decided the civil fraud penalties asserted by the SEC were, as a remedy, legal in nature because they were designed to punish and deter, "rather than to restore the victim." *Jarkesy,* 603 U.S. at 124. By contrast, the section 6663 civil fraud penalties are remedial in nature and intended to compensate the Government for the increased costs incurred with examining fraudulent returns. *See Mitchell*, 303 U.S. at 401. The penalties "are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id.*

Courts have held that such penalties are properly considered remedial where they safeguard the collection of revenue, reimburse the Government for the expense of investigation, and reimburse the Government for lost revenue, as is the case here. *Mitchell*, 303 U.S. at 401 & n.4 (citing *Stockwell v. United States*, 80 U.S. 531 (13 Wall.) 547, 551 (1871)) (additional citations omitted); *accord Thomas v. Comm'r*, 62 F.3d 97, 100 (4th Cir. 1995) ("For over fifty years, the [tax fraud penalty] has been regarded as remedial, rather than punitive, in nature.").

Characterizing tax fraud penalties as remedial makes sense because, unlike the penalties at issue in *Jarkesy*, 603 U.S. at 118, 123-24, such penalties are proportional to the amount of tax underreported and underpaid. 26 U.S.C. §§ 6651, 6663; *Mitchell*, 303 U.S. at 401 ("The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation."); *Lee v. Comm'r*, 227 F.2d 181, 183 (5th Cir. 1955) (fraud penalties "are but civil administrative sanctions of a remedial character in aid of the assessment and collection of taxes"). In other words, such penalties are intended simply "to secure full compensation for interference with the rights of the United States." *Stockwell*, 80 U.S. at 551. And civil penalties that are "intended simply to extract compensation or restore the status quo" constitute an equitable remedy, rather than a legal remedy to which Seventh Amendment rights potentially attach.[5] *Tull v. United States*, 481 U.S. 412, 422 (1987).

Plaintiffs also continue to lean on another case that has little to do with this one, *United States v. Sagoo*, No. 24-CV-01159, 2025 WL 2689912 (N.D. Tex. Sept. 19, 2025). *See* Am. Compl. ¶¶ 69, 85-86, 96, 107, 118. In *Sagoo*, the United States sued the defendant seeking a judgment for unpaid penalties assessed for her failure to report her interest in foreign bank accounts under 31 U.S.C. § 5321(a)(5). There are several immediate and obvious differences between *Sagoo* and this case. First, as explained in detail above, Plaintiffs filed the Tax Court case, while the United States was the plaintiff in *Sagoo*. Second, Plaintiffs' Tax Court proceeding is in a non-Article III tribunal, while *Sagoo* is in a federal district court. Third, the

---

[5] Of course, "all civil penalties have some deterrent effect." *Hudson v. United States*, 522 U.S. 93, 102 (1997). But the fact "[t]hat a statute serves to deter future conduct does not automatically render it punitive, particularly where its overriding goal is remedial." *Garner v. U.S. Dep't of Labor*, 221 F.3d 822, 827 & n.31 (5th Cir. 2000) (collecting cases).

IRS proposed the assessments at issue in the Tax Court case under the internal revenue laws, rather than the Bank Secrecy Act. Plaintiffs ignore all those points.

Plaintiffs also ignore the fact that a "concession" in a different case against a different party cannot assist them here because nonmutual offensive collateral estoppel is not applicable against the Government. *United States v. Mendoza*, 464 U.S. 154, 162 (1984). They ignore the fact the government's statement in *Sagoo* was much narrower than Plaintiffs claim. In *Sagoo*, the Government sued the defendant to collect a debt, and it stated that it would not have contested a jury demand *in that case* had the defendant made one. *See* 2025 WL 2689912 at *1, 3 n.7. That statement reflected the posture of the case rather than the nature of the debt. Indeed, the disputed issue was whether the defendant had a right to a jury trial *before* the penalties were assessed or whether a trial de novo *after* assessment was sufficient to protect her rights. *See id.* at *3. They ignore the fact that any statement in *Sagoo* simply would not apply here given the difference in the types of penalties. And any reliance on *Sagoo* is now undermined. *Sagoo* relied heavily on the Fifth Circuit's decision in *AT&T v. FCC*, 135 F.4th 230 (5th Cir. 2025). *See* 2025 WL 2689912 at *3-4. The United States' appeal in *Sagoo* was stayed pending the government's appeal to the Supreme Court in *AT&T.* And the Supreme Court has now reversed the Fifth Circuit's decision. *FCC v. AT&T, Inc.*, 2025 WL 2689912 (June 4, 2026).

In short, Congress was within its rights to allow the IRS to make the administrative determination of a tax fraud penalty because it is a matter concerning the collection of revenue and falls squarely within the public rights exception to the Seventh Amendment. *Jarkesy* and *Sagoo* are not to the contrary. The Court should dismiss Plaintiffs' first four causes of action.

*ii. There is no constitutional right to a jury trial in suits against the sovereign.*

A second, related doctrine emphasizes that Plaintiffs have no right to a jury trial in Tax Court. "The United States, as sovereign, is immune from suit save as it consents to be sued . . .

and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *accord F.A.A. v. Cooper*, 566 U.S. 284, 290-91 (2012). Because there was no right at common law to bring a suit against the sovereign without the sovereign's consent, there was necessarily no right to a jury trial in a suit against the sovereign without the sovereign's consent. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Thus, "[i]t has long been settled that the Seventh Amendment right to a trial by jury does not apply in actions against the Federal Government." *Id*. (citing *Glidden v. Zdanok*, 370 U.S. 530, 572 (1962)). *See also Galloway v. United States*, 319 U.S. 372, 388-89 (1943); *McElrath v. United States*, 102 U.S. (12 Otto) 426, 440 (1880)).

Tax Court petitions are filed against the Commissioner in his official capacity and therefore seek relief against the sovereign. *Mathes v. Commissioner*, 576 F.2d 70, 71-72 (5th Cir. 1978). While the Seventh Amendment preserves the right to trial by jury only in "Suits at common law," U.S. Const. Amend. VII, a Tax Court proceeding is not such a suit. Though the Tax Court may issue a decision that "redetermin[es]" whether there is a deficiency in a taxpayer's return, it lacks the authority to enter a final judgment ordering a taxpayer to pay taxes or penalties. 26 U.S.C. 6213(a); see *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 542-543 (1937). Even if the Tax Court upholds the IRS's tax and penalty determinations, the government may obtain a money judgment against the taxpayer only by filing a collection suit in district court. *See* 26 U.S.C. §§ 7401, 7402(a). A Tax Court proceeding thus is not a suit at common law in which a court may make a binding award of damages, penalties, or other legal relief. *See Olshausen*, 273 F.2d at 27-28; *Swanson v. Comm'r*, 65 T.C. 1180, 1183- 1184 (1976).

Consistent with principles of sovereign immunity, any right to a jury trial in such a proceeding would therefore need to be "clearly and unequivocally" expressed by Congress.

*Lehman*, 453 U.S. at 162. Here, the provisions of the Internal Revenue Code establishing the Tax Court are, at most, silent as to its ability to conduct jury trials, *see* 26 U.S.C. § 7441, *et seq.*, which falls well short of a "clear and unequivocal" expression. Consequently, courts have uniformly held that taxpayers have no Seventh Amendment right to a jury trial in the Tax Court. *Mathes*, 576 F.2d at 71-72; *Funk*, 687 F.2d at 266; *Blackburn*, 681 F.2d at 462. This is the case here – Plaintiffs' petition is before the Tax Court where the sovereign has not consented to a trial by jury.

***b. Plaintiffs chose to litigate their fraud penalties in a venue without jury trials.***

Plaintiffs should not be afforded a jury trial after deliberately choosing to litigate in a forum that does not offer jury trials. Plaintiffs filed a petition in Tax Court. They chose that venue. The Tax Court is an Article I tribunal that possesses only those powers that Congress has specifically conferred upon it. 26 U.S.C. § 7441. There is no authority for the Tax Court to conduct jury trials.

The Tax Court is, by design, "not an agency of, and shall be independent of, the executive branch of the Government." *Id.* Because it is "purely a creature of statute," *Smith's Estate v. Commissioner*, 638 F.2d 665, 669 (3d Cir. 1981), the Tax Court "possesses only those powers expressly conferred upon it by Congress" and "may exercise jurisdiction only pursuant to specific legislative enactments." *Maier v. Comm'r*, 360 F.3d 361, 363 (2d Cir. 2004) (citing *Comm'r v. McCoy*, 484 U.S. 3, 7 (1987)). Put another way, the Tax Court is a court of "strictly limited jurisdiction and powers." *Roberts v. Comm'r*, 175 F.3d 889, 895-96 & n.7 (11th Cir. 1999) (collecting cases); *accord Continental Equities, Inc. v. Comm'r*, 551 F.2d 74, 79-80 (5th Cir. 1977). Courts have consistently recognized that "[t]here is nothing in the statutory procedure established by Congress providing for a trial by jury in the Tax Court." *Swanson*, 65 T.C. at

1184; *accord Mathes*, 576 F.2d at 71-72; *Funk*, 687 F.2d at 266; *Blackburn*, 681 F.2d at 462 (6th Cir. 1982); *Dorl*, 507 F.2d at 407; *Olshausen*, 273 F.2d at 27.

Plaintiffs complain that they are restricted to the "limited option" of the Tax Court, ECF 9 at 2, but that's not true. Plaintiffs had a choice of forum. The traditional mechanism for taxpayers to dispute their liability for taxes and tax penalties is a post-payment refund suit. *See CIC Servs.,* 593 U.S. at 212. To bring a refund suit, a taxpayer must first pay the taxes and penalties, ordinarily in full; submit a refund claim; and, if the IRS denies the claim or six months elapse without a decision thereon, file a refund suit in district court or the Court of Federal Claims. *See* 26 U.S.C. §§ 6532(a)(1), 7422(a); 28 U.S.C. §1346(a)(1); *United States v. Janis*, 428 U.S. 433, 440 (1976). This "pay first and litigate later" approach, *Flora v. United States*, 357 U.S. 63, 75 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960), embodies the longstanding tradition of Anglo-American law. *See*, *e.g.*, *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 277-78 (1856). The Supreme Court has long recognized that post-payment review comports with due process. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18 (1977) (collecting cases).

For some taxes and penalties, Congress has provided an additional avenue of judicial review for taxpayers to dispute their liability before the IRS assesses and the taxpayer pays. Specifically, Congress has provided so-called "deficiency procedures" for assessing and collecting income, estate, and certain excise taxes and associated penalties. *See* 26 U.S.C. §§ 6211-6213, 6665(a)(1), 6671(a). For taxes subject to deficiency procedures, the IRS is authorized to issue a "notice of deficiency" to a taxpayer determined to have failed to correctly report his tax liability. *See* 26 U.S.C. § 6212(a). The taxpayer may then petition the Tax Court

for a determination of the liability set forth in the notice of deficiency without first paying the tax and any penalties determined to be due. *See* 26 U.S.C. § 6213(a).

Situated within this framework, controlling precedent provides that, where a taxpayer has the option of pursing a refund suit in district court and requesting a jury trial but instead "elects to bring his suit in the Tax Court" where no jury trial is available, he has not been deprived of any "right, statutory or constitutional, to a trial by jury." *Mathes*, 576 F.2d at 71-72; *accord Blackburn*, 681 F.2d at 462; *Olshausen*, 273 F.2d at 27. To the contrary, he has waived it. A litigant waives his right to a jury trial by choosing to proceed in a forum where none is available. *Ex parte Bakelite Corp.*, 279 U.S. 438, 453-54 (1929) (citing *McElrath*, 102 U.S. at 440) (Court of Federal Claims); *Olshausen*, 273 F.2d at 27 (Tax Court). This is because a litigant that "avails himself of the privilege of suing the government in the special court organized for that purpose … must do so subject to the conditions annexed by the government to the exercise of the privilege." *McElrath*, 102 U.S. at 440. That is the case here. Plaintiffs chose to file a Tax Court petition and are now stuck with the forum they chose.

## IV. Plaintiffs' Fifth and Sixth Causes of Action under 26 U.S.C. § 6103 and the Privacy Act fail as they were not pleaded with specificity and are time-barred.

The Fifth and Sixth Causes of Action implicate 26 U.S.C. § 6103 and the Privacy Act as they allege unauthorized disclosures. However, Plaintiffs still fail to allege a specific disclosure; fail to allege facts that show any disclosure was wrongful; fail to allege the number of purported disclosures; and fail to allege actual damages. Suits brought under § 6103 and the Privacy Act are not to be used as vehicles for the exploration of the IRS's actions. To survive a motion to dismiss, the Plaintiffs must plead with specificity a specific wrongful disclosure. Plaintiffs still have not done so. And Plaintiffs still fail to show that they can meet the timeliness requirements under § 6103 and the Privacy Act. Accordingly, this Court should dismiss the Fifth and Sixth

Causes of Action pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state a claim upon which relief can be granted.

### ***a. Plaintiffs fail to specifically allege any unauthorized disclosures under 26 U.S.C. § 6103 or harm that would support actual damages.***

Restrictions on disclosure of tax return information are found in 26 U.S.C. § 6103. IRS officers and employees generally cannot disclose a tax return or tax return information they obtain in connection with their official duties "except as authorized by" law. 26 U.S.C. § 6103(a). In other words, § 6103 makes tax returns and tax return information confidential unless there is a provision within that section authorizing release. *Comm. on Ways and Means, U.S. House of Reps. v. U.S. Dept. of Treas.*, 45 F.4th 324, 328 (D.C. Cir. 2022) (citing 26 U.S.C. § 6103(a)). Return information includes information the IRS gathers with respect to determining a taxpayer's potential liability for a tax or penalty, such as during an audit. *See* § 6103(b)(2)(A).

But, of course, the IRS must sometimes disclose tax returns or tax return information to do its job. 26 U.S.C. § 6103(k)(6) allows IRS officers and employees to disclose tax information for investigative purposes. The exception covers disclosures by IRS employees while conducting audits in connection with their official duties. *Id*. It allows IRS employees to disclose tax information as necessary to gather information they cannot otherwise obtain, if the information is needed to determine the correct tax liability. *Id*. *See also* Treas. Reg. § 301.6103(k)(6)-1(a). A disclosure is necessary if the employee reasonably believes, based on the facts and circumstances at the time of the disclosure, that he or she must make the disclosure in order to obtain information to carry out the audit. *See* § 301.6103(k)(6)-1(c)(1).

The Internal Revenue Code permits a taxpayer whose return or return information is disclosed without authorization to recover damages. 26 U.S.C. § 7431. An allegation must put forth three elements to assert a claim § 7431: (1) an unauthorized disclosure (2) that was

knowingly or negligently made and (3) that violated § 6103. *Flippo v. United States,* 670 F. Supp. 638, 641 (W.D.N.C. 1987), *aff'd*, 849 F.2d 604 (1988). While a plaintiff is not required to prove his or her case in the complaint, he or she "must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Marsoun v. United States*, 525 F. Supp. 2d 2016, 212 (D.D.C. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the plaintiff must allege "who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made." *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82 (D.D.C. 2018) (internal quotation marks omitted). "This level of detail is required to put the Government on notice of which exact actions a plaintiff challenges," permitting it to identify which exception allowing disclosure, if any, might apply. *Id.* (same). And the requirement to allege *when* the disclosures occurred allows the United States and the Court to determine whether Plaintiffs' suit is timely. *See* 26 U.S.C. § 7431(d). Thus, bald allegations of disclosures to third parties without the taxpayer's consent are not sufficient. *Marsoun*, 525 F. Supp. 2d at 212.

Bald allegations are all Plaintiffs offer. The first element they must satisfy is "an unauthorized disclosure." *Flippo*, 670 F. Supp. at 641. But Plaintiffs do not identify an unauthorized disclosure. Plaintiffs allege that the IRS communicated Feingold's "confidential health information" to clients, Am. Compl. at ¶¶ 42, 47, and "other confidential return information of Plaintiffs to third parties," *id.* at ¶ 43. Aside from Feingold's health information, it is not even clear whose return information was allegedly disclosed—Feingold's, FLLC's, or FMS's. Plaintiffs merely allege there was a disclosure to a third party, the exact type of bald allegation that the court in *Marsoun* found to be insufficient. They do not allege facts that would show that the disclosure was not authorized in light of the IRS's permission to disclose tax return

information under § 6103(k)(6) or any other subsection of § 6103. Thus, Plaintiffs have failed to allege the first element of a § 7431 suit. *See Bancroft*, 330 F. Supp. 3d at 101.

In addition, Plaintiffs' Fifth Cause of Action fails to allege the number of disclosures, stating that it is undeterminable without discovery. Am. Compl. at ¶ 139. Plaintiffs wish to use this suit to conduct a fishing expedition, and that is improper.

***b. Plaintiffs fail to specify a disclosure in violation of the Privacy Act, so the Court should dismiss the Sixth Cause of Action.***

Plaintiffs' Sixth Cause of Action, their Privacy Act claim, fails for two reasons. First, to the extent that they seek to recover damages for the IRS's allegedly wrongful disclosure claims, their Privacy Act claim is preempted by § 7431. Second, to make out a Privacy Act claim, Plaintiffs must plead harm causally related to the disclosure. They fail to do so.

The Privacy Act of 1974 prohibits government agencies from disclosing "any record . . . contained in a system of records by any means of communication to any person, or to another agency," unless the records are disclosed (1) to the individual to whom they pertain in response to a written request from the individual, (2) after obtaining written consent to disclose from the person to whom they relate, or (3) for a purpose enumerated in 5 U.S.C. §§ 552a(b)(1)-(13). 5 U.S.C. § 552a(b). Civil remedies exist for violations of the Privacy Act. 5 U.S.C. § 552a(g). Civil remedies are available, in part, if a government agency "fails to comply with any provision of [26 U.S.C. § 552a] . . . in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D).

Plaintiff's Sixth Cause of Action alleges two different types of harm. Both types fail to state a claim for relief. First, Plaintiffs allege a violation of the Privacy Act based on the purported "unlawful disclosure of Plaintiffs' return information to third parties." Am. Compl. at ¶ 147. But courts routinely hold that 26 U.S.C. § 7431—the basis of Plaintiff's Fourth Cause of

Action—provides the exclusive remedy for the wrongful disclosure of tax information. *See, e.g.*, *Gardner v. United States*, 213 F.3d 740, 741-42 (D.C. Cir. 2000) (discussing how courts interpret the relationship between § 6103 and the Privacy Act); *Hobbs v. United States*, 209 F.3d 410, 412 (5th Cir. 2000) (noting that a majority of courts that have considered the interaction of § 6103 and the Privacy Act have concluded that § 7431 is the exclusive remedy for the disclosure of tax return information). Accordingly, Plaintiffs cannot recover under the Privacy Act for the alleged wrongful disclosures.

The other type of harm Plaintiffs allege is a failure to safeguard. *See* Am. Compl. at ¶¶ 143-146. *See also id.* at ¶¶ 36-40. But to recover any amount under the Privacy Act, a plaintiff must "prove at least some 'actual damage.'" *F.A.A. v. Cooper*, 566 U.S. 284, 294-95 (2012) (citing *Doe v. Chao*, 540 U.S. 614 (2004)). It is a plaintiff's burden to plead and prove financial harm causally related to a defendants' alleged acts. *Biden v. IRS*, 752 F. Supp. 3d 97, 111 (D.D.C. 2024) (citing *Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016)). This requires plaintiffs to "specifically allege that they have suffered calculable damages," or their case can be dismissed for failing to state a claim. *Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016). Recovery is not available for reputational or emotional harm, *Welborn*, 218 F. Supp. 3d at 82, or for harassment, *Biden*, 752 F. Supp. 3d at 112 (citation omitted). An allegation that present and future financial opportunities were lost is also insufficient to state a claim under the Privacy Act because they "neither plead actual damages nor show precisely how they relate to the IRS agents' conduct." *Biden*, 752 F. Supp. at 112.

Plaintiffs allege only general concerns with the IRS's safeguards, relying on unidentified "notices" that the IRS received from the Treasury Inspector General for Tax Administration (TIGTA). Indeed, Plaintiffs' safeguarding claims continue to rest solely on TIGTA's concerns.

They fail to identify how an absence of safeguards led to a breach of their privacy—or any breach that could be distinct from their § 7431 claim.

And again, Plaintiffs fail to allege actual harm. And they cannot rely on *Griffin* to get over that hurdle. In *Griffin*, the "entire extent of [the plaintiff's] damages allegations under his Privacy Act claim are as follows: 'Mr. Griffin has and will continue to sustain damages directly traceable to the IRS's violations set forth above. Mr. Griffin is therefore entitled to damages under 5 U.S.C. §§ 552a(g)(1)(D) and (g)(4).'" *Griffin v. Internal Revenue Serv.*, 730 F. Supp. 3d 1312, 1321 (S.D. Fla. 2024). That is virtually identical to the allegation by the Plaintiffs in this case: "Plaintiffs will continue to sustain substantial financial and other damages as a result of Defendants' repeated violations of the Privacy Act set forth above." Am. Compl. at ¶ 148. But in *Griffin*, the court dismissed the Privacy Act claim, explaining that "the mere mention of such damages, without more, is insufficient to support a claim under the Privacy Act." 730 F. Supp. 3d at 1322. This Court should likewise reject Plaintiffs' claim that the IRS failed to safeguard their information.

***c. Plaintiffs fail to allege facts showing that their causes of action under § 6103 and the Privacy Act are not time-barred.***

A suit under both the Privacy Act and § 7431 for alleged misconduct under § 6103 must be brought no later than two years after the plaintiff discovers the unauthorized disclosure. 26 U.S.C. § 7431(d); 5 U.S.C. § 522(g)(5). Plaintiffs filed this suit on February 4, 2026. ECF 1. Therefore, to the extent Plaintiffs knew about the purported unauthorized disclosures prior to February 4, 2024, their claims are time-barred.

Plaintiffs omit dates of the alleged disclosures or their discovery of the disclosures from the Complaint. Still, many of the alleged disclosures Plaintiffs include in their Complaint were known to them by May 2021—over five years ago—when they complained about the IRS's

supposedly harassing conduct by letter to the then-Commissioner. ECF 20-1 (Letter dated May 14, 2021 to Chuck Rettig).

***

Plaintiffs again fail to plead with specificity the purported unauthorized disclosures or why they were wrongful. Nor have they shown their Complaint is timely. This Court should dismiss the Fifth and Sixth Causes of Action.

**V. Plaintiffs' Seventh Cause of Action for purported First Amendment violations still fails as they cannot show retaliation.**

"The First Amendment guarantees an individual the right to speak freely, including the right to criticize the government and government officials . . . [t]o protect that right, public officials are prohibited from retaliating against individuals who criticize them." *Trulock v. Freeh*, 275 F.3d 391, 404 (4th Cir. 2001). But as the Supreme Court has observed, the test for retaliation should not place someone "in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 285 (1977). Otherwise, any taxpayer who wrote a letter to the Commissioner could gain a tactical advantage in tax litigation. *See id.* at 285-86. Therefore, a person who complains about First Amendment retaliation must first show that he engaged in constitutionally protected conduct and that the conduct was a "substantial factor" in the government's action against him. *See id.* at 287. If he is able to do so, the government may rebut the prima facie case by showing "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Id. See also, e.g.*, *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (applying *Mount Healthy* in the context of prisoner retaliation claims).

Plaintiffs' retaliation claim fails for two reasons. First, in this context, any adjudication of the claim will necessarily affect Plaintiffs' ongoing tax dispute. That is what their complaint is about. As a result, the Declaratory Judgment Act bars the requested relief. Second, Plaintiffs have not even alleged facts sufficient to meet *Mount Healthy*'s "substantial factor" standard, so their claim should be dismissed for failure to state a claim.

***a. Plaintiffs' requested declaratory relief is barred by the DJA.***

Plaintiffs' Seventh Cause of Action asks the Court to "declare that the Government's conduct has violated Plaintiffs' rights under the First Amendment." Am. Compl. at ¶ 159. Under the circumstances here, such a declaratory judgment falls afoul of the DJA. According to Plaintiffs, the allegedly retaliatory conduct includes issuing a statutory notice of deficiency; requesting information from third parties; purportedly failing to obtain required approval for asserting the fraud penalties; disclosing confidential return information; and prolonging the Tax Court cases. *See id.* at ¶ 154. To adjudicate those claims, the Court would have to decide whether the IRS would have reached the same decision absent the protected conduct. *See Mt. Healthy*, 429 U.S. at 285-87. And a finding in favor of the Plaintiffs would invalidate the IRS action. So, any such declaratory judgment would be one "with respect to Federal taxes." 28 U.S.C. § 2201(a). As explained above, the Court may not issue a declaratory judgment with respect to Federal taxes. *Id.*

To see why this principle applies, it is helpful to remember that the DJA and the AIA are coextensive. *See Sigmon Coal,* 226 F.3d at 299. The AIA would block an injunction against the purportedly retaliatory conduct, all of which is essential to the assessment of tax:

- The Court cannot enjoin the issuance or enforcement of a statutory notice of deficiency, for the reasons explained in Part I, above. *See also, e.g.*, *Rivera v. IRS*, 708 Fed. Appx. 508, 511 (10th Cir. 2017); *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979).

- The Court cannot enjoin the IRS from gathering information pertaining to a particular taxpayer, *see e.g.*, *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320-21 (5th Cir. 1981), or from using information that it has gathered, *see Koin v. Coyle*, 402 F.2d 468 (7th Cir. 1968).
- The Court cannot enjoin penalty assessments on the theory that the IRS failed to follow supervisory-approval requirements. *See Franklin v. United States*, 49 F.4th 429, 434 (5th Cir. 2022).
- The Court cannot enjoin the IRS from disclosing return information in the course of conducting an audit. *See Agbanc Ltd. v. Berry*, 678 F. Supp. 804, 806-807 (D. Az. 1988); *Calhoun v. Wells*, 1980 WL 1554, at *1-2 (D.S.C. Apr. 18, 1980).

Indeed, the Fourth Circuit has made it plain that the Court cannot enjoin a tax audit purportedly "intended to punish . . . political speech." *Judicial Watch*, 317 F.3d at 402.

Plaintiffs could not obtain an injunction against the IRS carrying out its assessment procedure, so they cannot obtain a declaratory judgment that would have the same effect. Their First Amendment claim should be dismissed.

***b. Plaintiffs again fail to show causation between the First Amendment activity and the purported retaliation.***

If the Court agrees that Plaintiffs' First Amendment claim is barred by the DJA, it need go no further. But if the Court finds that the DJA does not bar the Seventh Cause of Action, it should still dismiss that claim because Plaintiffs have failed to allege facts sufficient to show that their claimed protected activity caused the purportedly retaliatory conduct. The only specific protected First Amendment activity Plaintiffs claim caused the retaliation is a letter Plaintiffs' attorney sent to the Commissioner of the IRS. But Plaintiffs still do not allege facts sufficient to support an inference that the letter resulted in the purported retaliation.

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000)). As such, a party seeking recovery for "First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Id*. *See also Mt. Healthy*, 429 U.S. at 285-87 (discussing causation in detail).

Here, the Amended Complaint does not allege facts sufficient to show that their attorney's letter was a substantial contributing factor in the IRS's conduct that followed. Indeed, Plaintiffs indicate the opposite. Plaintiffs allege that Revenue Agent Cindy Chatelain continued to conduct her examination of Plaintiffs *exactly the same* after the letter as Revenue Agent Jennifer Miller did before the letter was sent to the then-Commissioner of the IRS. Compl. at ¶¶ 47, 48. Specifically, Plaintiffs alleged "Chatelain and the IRS proceeded with the exact course of action as during Miller's involvement: they contacted Plaintiffs' clients, disclosed confidential health and return information, and demanded waivers of the attorney-client privilege." *Id.* at ¶ 47. If nothing changed, the IRS did not retaliate.

Retaliation is defined as "The act of doing someone harm in return for actual or perceived injuries or wrongs." *Black's Law Dictionary* (12th ed. 2024). Assuming Plaintiffs' allegations to be true, they do not allege the necessary causation between Plaintiffs' allegedly protected activity and the defendants' alleged retaliatory conduct. Instead, Plaintiffs' allegations support a finding that there was *no* retaliation. Plaintiffs allege the IRS conducted business in the same manner as

before and after the letter was sent. Therefore, there was no change in conduct, and subsequently, no retaliation.[6] As a result, there is no causal relationship between Plaintiffs' protected activity and defendants' conduct. Plaintiffs' Seventh Cause of Action for its First Amendment claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### VI. The Eighth Cause of Action for a purported Fifth Amendment violation still fails because Plaintiffs have not alleged facts sufficient to show an equal protection violation.

Plaintiffs' Eighth Cause of Action is an equal protection claim. This claim fails too. "The Fifth Amendment provides that '[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . .' In numerous decisions, this Court 'has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.'" *Davis v. Passman*, 442 U.S. 228, 234 (1979). The approach and analysis related to Fifth Amendment equal protection claims is identical to the approach and analysis related to equal protection claims under the Fourteenth Amendment. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n. 2 (1975).

First, Plaintiffs' Fifth Amendment claims for a declaratory judgment contravene the DJA for the same reason their First Amendment claims do. *See* Part V.a, *supra*. The allegedly unlawful conduct is the same, *see* Am. Compl. at ¶ 154, as is the relief requested, *see id.* at ¶ 169. Accordingly, the Court should dismiss the Eighth Cause of Action because the requested declaratory judgment is one "with respect to Federal taxes." *See* 28 U.S.C. § 2201(a).

But if the Court disagrees, the Eighth Cause of Action is still due to be dismissed. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated

---

[6] To the extent that Plaintiffs are alleging that the retaliation was the IRS's finding that they had underreported that tax liability (Am. Compl. at ¶ 32), the proper forum to challenge this is in Tax Court. And the Plaintiffs have a pending case there. *See* ECF 9-1.

differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The Fourth Circuit has specifically held that mere allegations that plaintiff was retaliated against for their speech is not cognizable as an Equal Protection claim: "[a] pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999).

Thus, to the extent Plaintiffs' Fifth Amendment claim repackages their First Amendment retaliation claim, it must be dismissed. Paragraphs 154 and 157 of the Complaint suggest that the alleged disparate treatment was based on retaliation. *See* Am. Compl. at ¶ 154 (alleging deprivation of due process "through the retaliation alleged herein"), ¶ 157 (alleging "retaliation against Plaintiffs on the basis of the actual or perceived viewpoint of their protected speech" without specifying any such "viewpoint" other than Aughtry's letter). Under *Edwards*, these claims simply do not give rise to a claim under the Fifth Amendment.

Plaintiffs also allege that "[t]he Government caused Plaintiffs to be treated differently than other similarly situated taxpayers." Am. Compl. at ¶ 165, *see also id.* at ¶¶ 8-12. But Plaintiffs do not allege any membership in a protected class or any other fact that suggests discriminatory animus on the part of the IRS. And alleging different litigation positions does not rise to the requisite threshold, nor do the Plaintiffs state how the cases were factually similar other than being brought under the same causes of action. Instead, they appear to be alleging a "class of one" claim. While such claims are cognizable, the plaintiff must allege an "extremely high degree of similarity between themselves" and a comparably situated person. *See, e.g.*, *SAS*

*Assocs. 1, LLC v. City Council for City of Chesapeake, Va.*, 91 F.4th 715, 722 (4th Cir. 2024). Plaintiffs fail to make such an allegation.[7]

Accordingly, Plaintiffs have failed to state a Fifth Amendment claim. Their Eighth Cause of Action should be dismissed.

**VII. Plaintiffs' Ninth Cause of Action fails to state a claim for relief.**

Finally, in the Ninth Cause of Action, Plaintiffs ask the Court to "declare that the Government is using the levers of its powers to target Plaintiffs for improper and unlawful personal and/or ideological reasons." Am. Compl. ¶ 173. That claim should be dismissed because Plaintiffs have failed to allege facts that suggest "targeting," as explained above. *See* V.b, *supra*. And it should be dismissed because it seeks a declaratory judgment with respect to federal taxes. 28 U.S.C. § 2201(a). But even beyond those problems it should be dismissed because it fails to state a claim under the Declaratory Judgment Act.

The DJA allows a court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." § 2201(a). A declaratory judgment claim must raise a dispute that is "definite and concrete," "real and substantial." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). But a complaint that seeks a general "declaration that [Plaintiffs'] rights were violated" may not be sufficiently definite and concrete. *See Bianco v. Powell*, 2024 WL 3862661, at *3 (D.S.C. July 22, 2024). Here, given that Plaintiffs also seek declaratory judgment in their Seventh and Eighth Causes of Action, it is unclear what additional "rights or

---

[7] Plaintiffs briefly invoke President Trump's suit against the IRS arising out of Charles Littlejohn's leak of his tax returns. *See* Am. Compl. ¶¶ 8-12. But *Trump v. IRS* involved completely different facts, beginning with Littlejohn's criminal conviction for violating § 6103. *See* Judgment, *United States v. Littlejohn*, No. 23-cr-343 (D.D.C. Jan. 31, 2024). Plaintiffs do not and cannot show an "extremely high degree of similarity."

legal relations" the Ninth Cause of Action might assert. The Ninth Cause of Action thus fails to allege a dispute that is sufficiently definite and concrete to state a claim under the DJA.

### VIII. Venue is still not proper in South Carolina.

This Court should also dismiss this case as venue is not proper in South Carolina. 28 U.S.C. § 1406(a). Based on the facts at the time the complaint was filed, the proper venue is the Southern District of Florida.

For civil actions against the United States or a federal agency, venue is governed by 28 U.S.C. § 1391(e). Venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." Here, Plaintiffs have not named an individual defendant, so § 1391(e)(1)(A) does not apply. Neither do the other two clauses.

Plaintiffs' Amended Complaint attempts to cure the venue issue by describing Mr. Feingold's business dealings in South Carolina. Section 1391(e)(1)(B)'s "substantial part of the events" requirement means that venue only lies in a district where "a considerable portion of the events took place." *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 (D.D.C. 2016) (internal quotation marks omitted). Courts "should undertake a commonsense appraisal of the events having operative significance in the case" to decide whether the test is met. *Id.* (same). Broadstreet, Inc. is not a party to this suit, so the fact that Mr. Feingold conducted business in South Carolina through Broadstreet Inc. is of little importance. Am. Compl. at ¶¶ 24 (i)-(v). Further, the fact the IRS subpoenaed two people at Broadstreet and referred to it in recent Tax Court pleadings does not move the needle—that does not make up a "considerable portion" of the events." *Id.* at ¶¶ 24(vi)-(vii). By contrast, Mr. Feingold is Florida citizen, and the IRS's examination of his

return—and the various allegedly retaliatory decisions—occurred in Florida. Am. Compl. ¶¶ 16, 26. Under § 1391(e)(1)(B), venue lies in the Southern District of Florida.

Further, Plaintiffs attempt to stake venue under § 1391(e)(1)(C) on the claim that plaintiff "FMS is a Florida corporation with its principal place of business in Greenville, South Carolina." Am. Compl. ¶ 14. *See also* § 1391(c)(2) (entities with capacity to sue and be sued, if a plaintiff, are deemed to reside in the district of their principal place of business). But venue must be evaluated as of the time the complaint is filed, *see Flowers Indus., Inc. v. F.T.C.*, 835 F.2d 775, 776 n.1 (11th Cir. 1987), and the allegations in the Complaint do not match the public records at that time. On January 22, 2026 (about two weeks before the filing of the Complaint), Mr. Feingold filed FMS's 2026 Annual Report with the Florida Secretary of State. ECF 10-4. This report stated that FMS's current principal place of business was in Texas. *Id.* Indeed, FMS and FLLC were not even registered to do business in South Carolina until April 14, 2026 – 10 weeks after the complaint was filed, *see* ECF 11-5, and after the United States raised venue as a defense, *see* ECF 10 at 8-10. Seven days after the United States filed its Opposition to the Plaintiffs' emergency preliminary injunction, Mr. Feingold filed an amended annual report with the state of Florida alleging a new principal place of business in South Carolina:

**2026 FLORIDA LIMITED LIABILITY COMPANY AMENDED ANNUAL REPORT**
DOCUMENT# L15000153930
**Entity Name:** FEINGOLD MORGAN SANCHEZ LLC
**Current Principal Place of Business:**
211 N. MAIN ST.
GREENVILLE, SC 29601

**Current Mailing Address:**
211 N. MAIN ST.
GREENVILLE, SC 29601 US

**FILED**
**Apr 13, 2026**
**Secretary of State**
**1322464783CC**

ECF 19-2. That same day, Mr. Feingold registered FMS to do business in South Carolina, with Florida listed as the "Incorporated State":

South Carolina Secretary of State

**Business Entities Online**

File, Search, and Retrieve Documents Electronically

**Feingold Morgan Sanchez LLC**

| Corporate Information | | Important Dates | |
|---|---|---|---|
| **Entity Id:** | 01600028 | **Effective Date:** | 04/13/2026 |
| **Entity Type:** | Limited Liability Company | **Expiration Date:** | N/A |
| **Status:** | Good Standing | **Term End Date:** | N/A |
| **Domestic/Foreign:** | Foreign | **Dissolved Date:** | N/A |
| **Incorporated State:** | Florida | | |

ECF 19-3. *See also* ECF 11-5. But given the Annual Report on file at the time of the Complaint, as well as the fact that FMS was not even registered to do business in South Carolina when the Complaint was filed, the Court need not accept Plaintiffs' belated switcheroo. The case should be dismissed pursuant to 28 U.S.C. § 1406(a).

## CONCLUSION

Plaintiffs cannot use this case to halt the tax assessment machinery, including the Tax Court cases they themselves filed. They fail to allege any specific, unauthorized disclosure of information, and their claims over allegedly unauthorized disclosures appear to be time-barred. And Plaintiffs fail to allege facts sufficient to show the IRS violated any constitutional rights. In short, none of their grievances with the IRS give rise to a cognizable claim. And in any event, venue is improper in this District. Plaintiffs made no attempt to cure any of these defects in their Amended Complaint. The Court should dismiss this case.

Dated: June 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU

Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Amanda J. Cornwell*
AMANDA J. CORNWELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-514-8048
Fax: 202-514-4963
Amanda.Cornwell@usdoj.gov

*Of Counsel*:

BRYAN P. STIRLING
UNITED STATES ATTORNEY

CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will give notice of the filing to counsel of record.

*/s/ Amanda J. Cornwell*
Amanda J. Cornwell